**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ARNOLD CHAPMAN, individually and as the representative of a class of similarly-situated persons,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 09 C 07299** |
| | ) | |
| **v.** | ) | **Judge John J. Tharp, Jr.** |
| | ) | |
| **WAGENER EQUITIES, INC. and DANIEL WAGENER,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

On September 18, 2009, Plaintiff Arnold Chapman filed this proposed class action in the Circuit Court of Lake County, Illinois, against Defendants Wagener Equities, Inc. and Daniel Wagener, the company's president, (collectively, "WEI"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The defendants removed the action to this Court on November 20, 2009. On January 25, 2012, the plaintiff filed a motion to amend the proposed class definition set forth in his first amended complaint. Plaintiff then sought leave to file a second amended complaint that adds Paldo Sign & Display Company ("Paldo Sign") as a named plaintiff and class representative, in addition to modifying the class definition as proposed in the plaintiff's previous motion. For the reasons explained below, the plaintiff's motions are granted.

### I.     Background

#### A.  Procedural

The plaintiff's motion to modify the class definition, Dkt. 115, and motion for leave to file a second amended complaint, Dkt. 154, are before the Court within the context of several

other pending motions related to class certification. These are: (a) plaintiff's motions for class certification, Dkt. 60, for an evidentiary hearing on class certification, Dkt. 110, to file additional evidence, Dkt. 113, and to supplement and submit an expert report and transcript, Dkt. 128; and (b) the defendants' motion to strike the plaintiff's motion for leave to file additional evidence, Dkt. 131, and for a finding of a joint venture, Dkt. 173. In all, briefing of these motions consists of 25 filings submitted by both parties.

In response to an unrelated motion, the plaintiff has offered a suggestion on how to efficiently adjudicate all pending motions in this case. Dkt. 176, at 1-2. Noting that the briefing of the pending motions had become "convoluted" and "somewhat outdated," the plaintiff suggested the Court first rule on the motions to modify the class definition and for leave to file a second amended complaint, then strike the remaining pending motions as moot, and finally, grant the parties leave to file a streamlined set of briefs on class certification. The defendants "do not disagree" that the motions to modify and for leave to amend should be decided first, because class certification will involve issues of Chapman's adequacy as a class representative—an issue upon which the defendants' response to class certification hinges. Dkt. 178, at 4.

Accordingly, the Court will proceed on the plaintiff's suggestion and decide the motions to modify the class definition, Dkt. 115, and for leave to file a second amended complaint, Dkt. 154. Consequently, the following pending motions related to class certification are denied as moot: (1) the plaintiff's Motion for Class Certification, Dkt. 60; (2) the plaintiff's Motion for an Evidentiary Hearing on Class Certification, or in the Alternative, Oral Argument, Dkt. 110; (3) the plaintiff's Motion for Leave to Submit Additional Evidence in Response to Accusations Made in Defendant's January 13, 2012 Reply Brief, Dkt. 113; (4) the plaintiff's Motion for Leave to Submit the Expert Opinion of Richard W. Painter and Transcript of Hearing in *Creative*

*Montessori v. Ashford Gear*, Dkt. 128; (5) the defendant's Motion to Strike or for Leave to File a Written Response to Plaintiff's Motion for Leave to Submit the Expert Opinion of Richard W. Painter and the Transcript of the Hearing in *Creative Montessori v. Ashford Gear,* Dkt. 131; and (6) the defendants' Motion for a Finding that Plaintiff's Counsel Anderson + Wanca and Bock & Hatch, LLC, Are Engaged in a Joint Venture and Responsible for Each Other's Actions, Dkt. 173.

### B. Factual

Defendant Wagener Equities, Inc. is an "industrial real estate brokerage, sales, leasing and property management company." Dkt. 61, at 3 ("Plaintiff's Memorandum of Law in Support of Class Certification"). Business to Business Solutions ("B2B") was a fax advertising business, operated by Caroline Abraham from August 2005 to September 2007. *Id*. According to the plaintiff, the defendants hired B2B to coordinate a fax advertising campaign on WEI's behalf. *Id*. The plaintiff alleges that the defendants worked with B2B to design a fax advertisement, targeting "industrial users…people who would be interested in industrial real estate or have a need for industrial real estate only." *Id*. at 3-4. Once WEI complied with B2B's payment instructions, B2B faxed the advertisement to a total of 10,145 fax numbers on November 9 and 10, 2006. *Id*. at 6-7. The plaintiff contends that, contrary to the TCPA, B2B sent the fax to recipients with which the defendants had no existing business relationship, and without receiving prior consent. *Id*. at 5.

The fax advertisement received by the plaintiff directed recipients "Looking for Industrial Property" to "Search the most complete Chicago area Property Database for – FREE" at "www.FindIndustrialRE.com." Dkt. 34, Ex. A. The advertisement also explained that if recipients "received this fax in error and would like to be removed from [the defendants']

database," they should call "1-800-511-8943." *Id.* In the plaintiff's instant motion to modify the class definition, however, he contends that two forms of the advertisement were actually faxed on November 9 and 10, 2006, with the only difference between the two forms being the opt-out phone number displayed at the bottom of the advertisement. Dkt. 115, at 2.

Based on information taken, in part, from a B2B hard drive, the plaintiff's expert, Robert Biggerstaff, drafted a supplemental report detailing how B2B sent two sets of faxes with different opt-out numbers. Dkt. 115, Ex. A. According to the supplemental report, B2B started WEI's fax campaign on November 9, 2006 at 7:32 p.m., and then temporarily stopped the campaign on November 10, 2006 at 2:57 a.m. *Id.* For unknown reasons, B2B changed the opt-out phone number provided at the bottom of the advertisement during this pause, and then began sending the advertisement 15 minutes later at 3:12 a.m. *Id.* The report states that 8,555 persons, including Chapman, were sent the advertisement with the "1-800-369-5723" opt-out number, between November 9, 2006 at 7:32 p.m. and November 10, 2006 at 2:57 p.m. Another 4,795 people were sent the advertisement with the "1-800-511-8943" opt-out number on November 10, 2006, between 3:12 a.m. and 7:22 a.m. That is a total of 13,350 numbers, as opposed to the 10,145 originally alleged.

To date, the plaintiff has proposed three different class definitions at various stages in this litigation. The plaintiff's first amended complaint defines the proposed class as:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) with respect to whom Defendants did not have prior express permission or invitation for the sending of such faxes, and (4) with whom Defendants did not have an established business relationship.

Dkt. 34, at 4. However, in his motion for class certification, the plaintiff proposed that the class be defined as:

4

> All persons who were successfully sent a facsimile from "Wagener Equities" on
> November 9, 2006, or November 10, 2006, stating that people "Looking for
> Industrial Property" should "Go To: www.FindIndustrialRE.com" or call "1-800-
> 511-8943" "to be removed from our database."

Dkt. 61, at 9. In response to the motion for class certification, WEI objected to the plaintiff's
attempt to modify the class definition without seeking leave to amend the complaint. As stated
above, the motion for class certification is pending, and the Court, prior to this Order, has not
granted the plaintiff leave to amend.

In the motions now before the Court, the plaintiff proposes a class definition without
reference to either opt-out phone number:

> All persons who were successfully sent a facsimile from "Wagener Equities" on
> November 9, 2006, or November 10, 2006, stating that people "Looking for
> Industrial Property" should "Go To: www.FindIndustrialRE.com."

Dkt. 115, at 2. According to the plaintiff, this modification to the proposed class definition would
have no effect on the litigation, other than to include all absent class members (those putative
class members who received a fax with the opt-out number "1-800-369-5723") who received the
defendants' fax advertisement on either November 9 or 10, 2006.

The plaintiff's motion for leave to file a second amended complaint also seeks to add
Paldo Sign as a named plaintiff and class representative. According to the plaintiff, substituting
Paldo Sign as the class representative will address the issues of Chapman's adequacy as a class
representative raised by WEI in their response to the motion for class certification. *See* Dkt. 144
("Wagener Equities, Inc.'s and Daniel Wagener's Supplemental Addition of Section III(C)(4) to
Their Brief in Opposition to the Motion for Class Certification"). In general, the defendants
contend, and the plaintiff disputes, that Chapman lacks standing to bring a TCPA claim and to
serve as representative of the class because he was incarcerated in federal prison from 2003 to
2007, a period covering the time in which the fax at issue was allegedly sent. *Id.*

## II.     Analysis

### A.  Modification of the Class Definition

The plaintiff seeks to modify the proposed class definition pursuant to Federal Rule of Civil Procedure 23(c), arguing that the Court may alter or amend a class certification order any time before final judgment. Dkt. 123, at 3 (citing Fed. R. Civ. P. 23(c)(1)(C)). While that is undoubtedly the law, *see, e.g., In re Motorola Securities Litigation,* 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation," (citations omitted)), a class certification order has not been issued in this case. Therefore, there is no order granting or denying certification of a class to be modified or amended pursuant to Rule 23(c). *See* Fed. R. Civ. P. 23(c) ("*Altering or Amending the Order.* An order that grants or denies class certification may be altered or amended before final judgment."). Therefore, the Court construes the plaintiff's motion as a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15, and not the federal rules governing class certification. *See, e.g. G.M. Sign, Inc. v. Brink's Mfg. Co.,* No. 09 C 05528, 2011 WL 248511, at *4 (N.D. Ill. Jan. 25, 2011) (citations omitted) (noting that "District courts typically, though not invariably, hold a plaintiff seeking class certification to the definition espoused in the relevant complaint."); *see also Clarke v. Baptist Memorial Healthcare Corp.,* 264 F.R.D. 375, 381 (W.D. Tenn. 2009) ("To accommodate a new proposed class definition, plaintiffs will need to amend the complaint.").

It is axiomatic that a "district court should freely give leave to amend a complaint when justice requires." *Gevas v. Mitchell*, No. 11-2740, 2012 WL 3554085, at *4 (7th Cir. Aug. 20, 2012) (citing Fed. R. Civ. P. 15(a)(2); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 943 (7th Cir. 2012); *Johnson v. Cypress Hill,* 641 F.3d 867, 871-72 (7th Cir. 2011)). However, the Court can, and WEI argues the Court should, deny a motion for leave to amend "in

the case of undue delay…[or] undue prejudice to the opposing party by virtue of allowance of the amendment." *Id.* (citing *Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 432 (7th Cir. 2009); *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008)). But "while a court may deny a motion for leave to file an amended complaint, such denials are disfavored," *id,* and "delay on its own is usually not reason enough for a court to deny a motion to amend." *Id.* at *5 (citing Johnson, 641 F.3d at 872).

WEI argues that the plaintiff's motion to modify the class definition is not only untimely, but, if granted, would cause them "severe prejudice." Dkt. 159, at 10. Specifically, the defendants contend that the plaintiff's attempt to modify the proposed class definition is untimely under *Sanders v. Venture Stores,* 56 F.3d 774 (7th Cir. 1995) because discovery is closed and both the plaintiff and the plaintiff's expert "have been in possession of information demonstrating that the alleged facsimile at issue contained two removal numbers since this suit was initiated September 18, 2009," Dkt. 121, at 6, and have not provided a sufficient reason for discovering and/or mentioning this information two years after the suit was filed. *Id.* Moreover, according to WEI, "[a]llowing a modification and [Biggerstaff's] supplemental report to be submitted on this late date would require [the defendants] to re-depose Mr. Biggerstaff and obtain supplemental reports from its expert witnesses." *Id.* The defendants argue that they should not be required to incur these additional expenses as a result of the plaintiff's failure to adequately examine the information on B2B's hard drive. *Id.*

As an initial matter, this case is both procedurally and factually distinguishable from *Sanders.* In *Sanders,* the plaintiff sought leave to amend her complaint "after discovery was completed, after Venture filed its motion for summary judgment, after the district court indicated its inclination to grant the summary judgment and after it referred the matter to a magistrate

judge." 56 F.3d at 775. As the *Sanders* court explained, the Seventh Circuit has consistently "affirmed denials of a motion for leave to amend under circumstances…where the plaintiff has sought leave to amend after the defendant filed a successful motion for summary judgment." *Id.* 774. Furthermore, the plaintiff in *Sanders* provided no reason for the delay in filing her motion to amend, *id.* at 775, and granting the motion "clearly would [have] result[ed] in undue delay, as well as prejudice to Venture and the four new defendants, forcing Venture to *re-litigate the dispute on new bases*…and to incur new rounds of additional and costly discovery, and depriving it of the meaningful value of obtaining summary judgment." *Id.* at 774 (emphasis added).

Here, the defendants have not prevailed on, nor even filed, a motion for summary judgment. And while there may be some delay and additional limited discovery if leave to amend is granted, the defendants will not have to "re-litigate the dispute on new bases." The amendments proposed by the plaintiff do not add new claims.

The defendants complain that if the plaintiff is allowed to modify the class definition, they will need to re-depose Biggerstaff and obtain supplemental reports from their own experts. The defendants fail, however, to explain why re-deposition and supplement reports would be necessary. According to the defendants' response, the "information demonstrating that the alleged facsimile at issue contained two removal numbers" has been available to both parties since the initiation of the suit. Furthermore, the plaintiff's initial class definition was broad enough to cover any and all faxes sent by WEI. *See* Dkt. 34, at 4 ("All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants."). As such, the defendants were on notice of the asserted claims, which

covered all of the faxes sent during the advertising campaign, regardless of the opt-out number included at the bottom of the advertisement.

Further, the defendants' argument that the motion is untimely is undercut by the fact that "[l]itigants and judges regularly modify class definitions" after certification. *Schorsch v. Hewlett-Packard Co.,* 417 F.3d 748, 750 (7th Cir. 2005). These modifications can be made at any time prior to final judgment, but are often contemplated by the court on a motion for class certification. *See*, *e.g., Boundas v. Abercrombie & Fitch Stores, Inc.,* 280 F.R.D. 408, 411 (N.D. Ill. 2012); *Hawkins v. Securitas Sec. Services USA, Inc.,* 280 F.R.D. 388, 392 (N.D. Ill. 2011) ("Although Plaintiffs did not ask that the class be narrowed if their proposal were deemed too broad, the court has the discretion to narrow the class," citing *In re Motorola,* 644 F.3d at 519). In other words, absent the plaintiff's motion to modify the class definition, the Court still has the discretion, and the obligation, to modify the class definition if necessary. *See Hawkins,* 280 F.R.D. at 392 (citing *In re Motorola,* 644 F.3d at 519; *Powers v. Hamilton County Public Defender Commission,* 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions, so the district court's multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed."). So a change to the class definition may have been forthcoming on a motion for class certification at an even later date—particularly if the Court agreed with the defendants' argument that the class definition in the first amended complaint is "unworkable." *See* Dkt. 71, at 5 ("Wagener Equities, Inc. and Daniel Wagener's Response in Opposition to Plaintiff's Motion for Class Certification").

Nevertheless, WEI contends that the plaintiff's proposed class definition is limited to the removal number "1-800-511-8943."[1] However, the Court never granted the plaintiff leave to amend either the class definition or complaint. Therefore, the only proposed class definition currently before the Court is the one contained in the first amended complaint. At bottom, by moving to amend the class definition to specifically reference the substance of the fax at issue, the plaintiff has attempted to cure some of the potential defects with his first class definition prior to the Court's ruling on a motion for class certification.[2] It is difficult to see how a more specific and tailored class definition will prejudice the defendants, particularly where the Court may have been compelled, at a potentially later date, to make modifications to the class definition anyway.

The plaintiff's modifications to the class definitions will not unduly delay this litigation or prejudice WEI. Accordingly, the plaintiff's motion to modify the class definition is granted.

### B. Joinder of Paldo Sign as Named Plaintiff and Class Representative

The plaintiff also seeks leave to file a second amended complaint adding Paldo Sign as a named plaintiff pursuant to Federal Rules of Civil Procedure 15 and 20. Dkt. 154. Pursuant to Rule 20, a party may be joined as a plaintiff if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)-(B). "The purpose of Rule 20(a) in

---

[1] The Court notes that in WEI's response to the motion for class certification, the defendants objected to the plaintiff's attempt to modify the class definition without seeking leave to amend the complaint. The defendants have apparently dropped this line of attack, instead seeking to hold the plaintiff to the very class definition to which they previously objected.

[2] The adequacy of the class definition is not at issue here, and the Court expresses no opinion on that matter.

permitting joinder in a single suit of persons who have separate claims, albeit growing out a single incident, transaction, or series of events, is to enable economies in litigation." *Elmore v. Henderson,* 227 F.3d 1009, 1012 (7th Cir. 2000). More to the point, Rule 20 "should be given the liberal interpretation need[ed] to implement its apparent purpose: the avoidance of multiple trials involving many similar or identical issues." *Goodman v. H. Hentz & Co.,* 265 F. Supp. 440, 443 (N.D. Ill. 1967).

WEI argues, again relying on *Sanders,* that the plaintiff's attempt to add Paldo Sign is untimely because plaintiff's counsel had other opportunities to choose a named plaintiff without Chapman's alleged inadequacies as a class representative, but failed to do so until those inadequacies became an issue. Dkt. 159, at 7. According to the defendants, plaintiff's counsel knew that Chapman was incarcerated during the time period the fax at issue was allegedly received, and yet opted to name Chapman as the proposed class representative anyway. *Id.* And like the modification to the class definition, the defendants argue that an amendment joining Paldo Sign as the named plaintiff would cause them "severe prejudice," "necessitat[ing]" additional expert and fact discovery and essentially start[ing] this matter over." *Id.* at 9-10. Of course, granting the plaintiff leave to amend will require the defendants to depose Paldo Sign and engage in some discovery to determine Paldo Sign's adequacy as a class representative. However, these additional burdens are not so severe as to warrant a denial of the plaintiff's motion, particularly where, as explained below, denial of the motion may result in even greater burdens for both parties.

Paldo Sign received the defendants' fax advertisement on November 10, 2006, as part of the same fax advertising campaign in which Chapman was involved. Therefore, the claims asserted by Paldo Sign stem from the same series of occurrences as Chapman's and involve

nearly identical questions of law and fact. *Cf. Lee v. Cook County, Illinois,* 635 F.3d 969, 971 (7th Cir. 2011) ("Multiple plaintiffs are free to join their claims in a single suit when '*any* question of law or fact common to all plaintiffs will arise in the action.'"). Accordingly, joinder of Paldo Sign in this case is proper under Rule 20, and the defendants do not contest this issue, only the timeliness and potential prejudice of the amendment.

It should be noted, however, that although the plaintiff moves to join Paldo Sign pursuant to Rule 20, both parties cite *Randall v. Rolls-Royce* in support of their respective arguments—a case in which the Seventh Circuit considered an argument for permissive intervention pursuant to Federal Rules of Civil Procedure 23 and 24 after class certification had been denied. 637 F.3d 818 (7th Cir. 2011). To resolve any potential confusion, the Court also addresses the plaintiff's motion within the context of the Seventh Circuit's holding in *Rolls-Royce*.

In *Rolls-Royce,* the plaintiffs appealed the district court's denial of class certification, in which the district judge explained that "the plaintiffs' claims were not 'typical of the claims or defenses of the class.'" *Id.* at 824. As an alternative to reversing the denial of class certification, the plaintiffs asked the Seventh Circuit to reverse the district judge's denial of their "motion to substitute two other class members for the original named plaintiffs—substitutes who might have a more typical (and, not incidentally, stronger) claim than the original plaintiffs." *Id.* The Seventh Circuit explained that "[s]uch substitution (via permissive intervention by an unnamed plaintiff, who if intervention is allowed becomes the named plaintiff and thus the class representative) is possible." *Id.* (citing Fed. R. Civ. P. 23(d)(1)(B)(iii), 24(b); *Champ v. Siegel Trading Co.,* 55 F.3d 269, 272-74 (7th Cir. 1995); *Birmingham Steel Corp. v. TVA,* 353 F.3d 1331, 1339 (11th Cir. 2003); *McKowan Lowe & Co. v. Jasmine, Ltd.,* 295 F.3d 380, 383, 389 (3d Cir. 2002)). Substitution is not automatic, however, and the Court must consider whether such

intervention will "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Whichever rules the Court applies—whether joinder under Rule 20 or permissive intervention by a class member pursuant to Rules 23 and 24—the Court's conclusion is the same. Granting the plaintiff's motion to amend will not unduly delay this litigation or prejudice the defendants, particularly when, denying the motion will result in even greater burdens and expense for both parties. To that extent, the defendants undermine their argument that the plaintiff's amendments will result in "extreme" prejudice by failing to address the likely consequences of denying the plaintiff's motion. As the plaintiff correctly notes, if the Court denied class certification on the grounds that Chapman was an inadequate class representative, nothing would prevent plaintiff's counsel from initiating a separate action naming Paldo Sign as plaintiff and class representative. *See Sawyer v. Atlas Heating and Sheet Metal Works, Inc.,* 642 F.3d 560, 563, 564 (7th Cir. 2011) (holding that "[t]olling lasts from the day a class claim is asserted until the date the suit is conclusively not a class action—which may be because the judge rules adversely to the plaintiff, or because the plaintiff [dismissed its complaint]," and explaining that "if the reason why class certification is denied in the first suit is that the plaintiff was not an appropriate class representative, then there is no basis for binding other members of the putative class…[rather, t]he remaining members are entitled to one full and fair opportunity to litigate the question whether a class action is proper."). The burden and costs of that route would exceed the comparatively minor expenses of granting plaintiff's motion. *See, e.g., Rolls-Royce Corp.,* 637 F.3d at 821 ("[C]ertification may be denied because the named plaintiff's claim is atypical of the claims of the other members of the class…then the only effect if the denial of certification is upheld may be the substitution, in a new class action suit, of another

class member for the named plaintiff in the old suit, and in that event the defendant's victory will be Pyrrhic."). It would make little sense for the Court to deny the plaintiff's motion on grounds of prejudice to the defendants when the end result would mean greater costs for all parties involved, and in effect, truly start the matter over as the defendants contend.

WEI counters that motions for leave to substitute a class representative are "not decided in a vacuum or dictated solely by efficiency concerns." Dkt. 159, at 9. The Court agrees and notes that the defendants make strong arguments that plaintiff's counsel could have exercised more diligence in their choice of a class representative and in defining the class from the outset of the litigation. Nevertheless, the practical implications of denying the plaintiff's motions remain, and efficiency concerns predominate for all parties involved, including the Court. In short, granting the plaintiff leave to amend will not only serve judicial economy and result in efficiency of this litigation, but save everyone time, effort, and resources.

Accordingly, the plaintiff is granted leave to file a second amended complaint modifying the class definition as proposed and joining Paldo Sign as a named plaintiff.

\*　　\*　　\*

For the reasons set forth above, the plaintiff's motions to modify the class definition, Dkt. 115, and for leave to file a second amended complaint, Dkt. 154, are granted. The plaintiff's Motion for Class Certification, Dkt. 60, the plaintiff's Motion for an Evidentiary Hearing on Class Certification, or in the Alternative, Oral Argument, Dkt. 110, the plaintiff's Motion for Leave to Submit Additional Evidence in Response to Accusations Made in Defendant's January 13, 2012 Reply Brief, Dkt. 113, the plaintiff's Motion for Leave to Submit the Expert Opinion of Richard W. Painter and Transcript of Hearing in *Creative Montessori v. Ashford Gear*, Dkt. 128, the defendant's Motion to Strike or for Leave to File a Written Response to Plaintiff's Motion for

14

Leave to Submit the Expert Opinion of Richard W. Painter and the Transcript of the Hearing in *Creative Montessori v. Ashford Gear,* Dkt. 131, and the defendants' Motion for a Finding that Plaintiff's Counsel Anderson + Wanca and Bock & Hatch, LLC, Are Engaged in a Joint Venture and Responsible for Each Other's Actions, Dkt. 173, are all denied as moot. The plaintiff is granted leave to file a new motion for class certification.

Entered: December 13, 2012

_____
John J. Tharp, Jr.
United States District Judge